The Honorable John C. Coughenour

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| JOHN J. VAN BUSKIRK, et al., | |
| Plaintiffs, | Case No. C06-1220-JCC |
| v. | |
| CONOCOPHILLIPS, INC., a foreign corporation; and INTALCO ALUMINUM CORPORATION, a foreign corporation, | ORDER |
| Defendants. | |

This matter comes before the Court on Defendants' motions for summary judgment (Dkt. Nos. 64 & 65), Plaintiffs' response (Dkt. No. 78), and Defendants' replies (Dkt. Nos. 81 & 83). Also before the Court are Plaintiffs' (Dkt. No. 88) and Defendants' (Dkt. No. 89) supplemental briefing requested by the Court in light of the Ninth Circuit's recent decision in *United States v. Milner*, --- F.3d ----, 2009 WL 3260528, at *2 (9th Cir.). Having considered the parties' briefing and the relevant record, the Court finds no genuine issue of material fact and hereby GRANTS Defendants' motions.

ORDER — 1
C06-1220-JCC

**I.    BACKGROUND**

Unless otherwise indicated, the following facts are undisputed or are taken in the light most favorable to Plaintiffs, the nonmoving parties:

This is the third lawsuit by Sandy Point property owners alleging similar claims against Defendants for damages related to beach erosion at Sandy Point. *See Nicholson v. Tosco Corp.*, CV02-2441-JCC (W.D. Wash.); *Ehlers v. ConocoPhillips, Inc.*, CV05-1181-JCC (W.D. Wash.). Plaintiffs are owners of property located in Sandy Point, near Ferndale, Washington. (Am. Compl. (Dkt. No. 4 at 1–4).) All Plaintiffs purchased their property in Sandy Point at different times between 1966 and 2006. (Def. Mot. (Dkt. No. 65 at B-1).) Plaintiffs' property interest extends to the Mean High Water ("MHW") line on the beach. (Pls.' Resp. (Dkt. No. 78 at 2–5).) The MHW line is determined by "projecting onto the shore the average of all high tides over a period of 18.6 years." *United States v. Milner*, --- F.3d ----, 2009 WL 3260528, at *2 (9th Cir. 2009); *United States v. Romaine*, 255 F. 253 (9th Cir. 1919) (quoting *Borax Consol. v. City of Los Angeles*, 296 U.S. 10, 26–27 (1935). The tidelands below the MHW are owned by the Lummi Nation and held in trust by the United States. *See Milner*, 2009 WL 3260528 at *2; *United States v. Boynton*, 53 F.2d 297 (9th Cir. 1931). Defendants ConocoPhillips Company ("ConocoPhillips") and Intalco Aluminum Corporation ("Intalco") operate industrial piers north of Sandy Point that have been in operation since 1954 and 1966, respectively. (Def. Mot. (Dkt. No. 64 at 1); Def. Mot. (Dkt. No. 65 at 1).)

In their amended complaint, Plaintiffs allege that Defendants were negligent in their construction of the industrial piers because these piers obstructed the natural flow of sediment to Sandy Point. (Am. Compl. (Dkt. No. 4 at 7).) Plaintiffs allege that over time, this obstruction exacerbated the effects of erosion by preventing accumulation of new sand deposits. (*Id.*) This

diminishment, Plaintiffs argue, constitutes damage to their individual properties. (Am. Compl. (Dkt. No. 4 at 7).) Plaintiffs alleged that Defendants are liable for waste, nuisance, and negligence for beach erosion at Sandy Point. (*See id.*) This Court granted Defendants' motion for partial summary judgment as to the waste and nuisance claims, leaving only negligence. (*See* Order (Dkt. No. 38).)

Defendants now move for summary judgment on the remaining negligence claim. Defendants' main argument is that Plaintiffs have failed to allege evidence sufficient to show that their beaches have eroded, or that any erosion was the fault of Defendants' piers.[1] (*See* Def. Mot. (Dkt. No. 64 at 1).) Defendants point to numerous instances in Plaintiffs' pleadings, which, Defendants claim, exhibit the lack of a causal connection between a measurable amount of erosion at Sandy Point and the piers. (*See* Def. Mot. (Dkt. No. 64 at 5–9); Def. Mot. (Dkt. No. 65 at 13–18); Def. Supplemental Br. (Dkt. No. 89 at 2, 4–5) ("They have not established by admissible evidence the amount of upland and beach that they claim to have lost, when those losses allegedly occurred, whether the changes are natural or artificially-caused and whether the changes in the upland boundary have been permanent.").)

The Ninth Circuit recently clarified the nature of the upland residents' property rights at Sandy Point. The *United States v. Milner* litigation concerned the interaction of the property owners at Sandy Point with the interest the Lummi Nation has in the tidelands below the MHW. In that case, the Ninth Circuit addressed a series of structures that beachfront landowners had built along the shore to prevent erosion and preserve their property line. *Milner*, 2009 WL 3260528, at *1. At the time the structures were built, they were within the boundaries of the property owners' land. *Id.* But the court found that over time, the shoreline at Sandy Point had

---

[1] Because this issue is dispositive, the Court need not consider Defendants' remaining arguments.

ORDER — 3
C06-1220-JCC

"eroded significantly," so that some of the defense structures that homeowners had erected were located on the Lummi property below the MHW. *Id.* at *2. The court ruled that the homeowners had committed a trespass and could not use defense structures to permanently affix a property line on the beachfront property so as to exclude the inherent ambulatory nature of the property. *See Id.* at *1.

The court held that as long as there had been no sudden or abrupt change in the shoreline, an "owner of riparian or littoral property[2] must accept that the property boundary is ambulatory, subject to gradual loss or gain depending on the whims of the sea." *Id.* at *6. Consequently, the court found that the natural erosion of the property line on the beachfront was "an inherent and essential attribute of the original property." *Id.* at *7 (citing *County of St. Clair v. Lovingston*, 90 U.S. 46, 68–69 (1874)).

## II. APPLICABLE STANDARD

### A. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *In re Caneva*, 550 F.3d 755, 761 (9th Cir. 2008) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the evidence in the light most favorable to the non-moving party. *Id.*

A defendant moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that

---

[2] Riparian land is situated along a river. Littoral land is situated along the ocean.

ORDER — 4
C06-1220-JCC

demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defend against the motion, the plaintiff must then go "beyond the pleadings" and demonstrate "'specific facts [in the record] showing that there is a genuine issue for trial.'" *Id.* at 24 (*quoting* FED. R. CIV. P. 56(e)(2).). A party opposing summary judgment bears the burden of establishing a genuine issue for trial by pointing to specific facts along with their location in the record. The Ninth Circuit has reminded litigants that "[t]he efficient management of judicial business mandates that parties submit evidence responsibly," *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 775 (9th Cir. 2002), and that "judges need not paw over the files without assistance from the parties." *Id.* (quoting *Huey v. UPS, Inc.*, 165 F.3d 1084, 1085 (7th Cir. 1999)).

### B. Negligence Standard

In Washington, a negligence claim requires "proof of a duty, a breach of [that] duty, a resulting injury, and proximate cause between the breach and the injury." *Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc.*, 423 F.3d 1056, 1078 (9th Cir. 2005). Proximate causation has two elements: cause in fact and legal cause. *Colbert v. Moomba Sports, Inc.*, 176 P.3d 497, 501 (Wash. 2008). Cause in fact is "established by showing that 'but for' the defendant's actions, the claimant would not have been injured." *Petcu v. State*, 86 P.3d 1234, 1244–1245 (Wash. Ct. App. 2004). Cause in fact is a determination generally reserved to the jury. *Id.* However, "when the facts are undisputed and the inferences therefore are plain and incapable of reasonable doubt or difference of opinion, . . . it may be a question of law for the court." *Fabrique v. Choice Hotels Int'l, Inc.*, 183 P.3d 1118, 1121–22 (Wash. Ct. App. 2008) (quoting *Bordynoski v. Bergner*, 644 P.2d 1173, 1176 (Wash. 1982)). Legal causation, on the other hand, "involves a determination of whether liability should attach given cause in fact and is a question of law for the

court based on policy considerations as to how far the consequences of the defendant's act should go." *Colbert*, 176 P.3d at 501.

## III. DISCUSSION

To overcome a motion for summary judgment on a negligence claim, "a plaintiff must show both that his injury is sufficiently connected to the tort . . . and that the *specific* pecuniary advantages, the loss of which is alleged as damages" resulted from Defendants' conduct. *Anza v. Ideal Steel Supply Corp.* 547 U.S. 451, 467 (2006) (emphasis added) (quoting 1 J. SUTHERLAND, LAW OF DAMAGES 18, 106–107 (1882)). The Restatement of Torts, which the *Anza* court also references, summarizes the principle of specificity of damages:

> One to whom another has tortiously caused harm is entitled to compensatory damages for the harm if, but only if, he establishes by proof *the extent of the harm and the amount of money representing adequate compensation* with as much certainty as the nature of the tort and the circumstances permit.

RESTATEMENT (SECOND) OF TORTS § 912 (2008) (emphasis added).

As a matter of law, Plaintiffs have not created a genuine issue of material fact to be determined at trial. *See Celotex*, 477 U.S. at 324. Specifically, Plaintiffs failed to sufficiently show that Defendants were the cause of a *quantifiable* portion of the injury they suffered. As causation and injury are essential elements of negligence, Plaintiffs fail to support their allegations of injury and causation to a level that would allow a reasonable jury to find in its favor. *See Metrophones*, 423 F.3d at 1078 (describing the necessary elements of establishing a negligence claim).

Plaintiffs must show not only that they have suffered damages on their beachfront property, but that a *measurable* portion of that damage was caused by Defendants' piers. The recent Ninth Circuit decision in *Milner* certified the notion that the beachfront property at Sandy Point is inherently ambulatory and subject to the "whims of the sea." *See Milner*, 2009 WL 3260528, at *1. Accordingly, when Plaintiffs took an interest in the beachfront, they also accepted the natural

deposits and losses of sand that add to or take away from their individual property above the MHW mark. Even with leave of the Court to address the *Milner* decision, Plaintiffs did not present evidence sufficient to create a genuine issue of material fact concerning the distinction between natural erosion and erosion caused by the Defendants.

Plaintiffs present some evidence to support their claims, but it does not successfully rebut the arguments made by the Defendants. Plaintiffs' only response to Defendants' assertions regarding a lack of evidence is that the declarations of the homeowners and their expert, Dr. Shepsis, can show that the piers are the "cause of the injury to Plaintiffs in blocking the flow of sediment that naturally flows to the south toward Sandy Point." (Pl. Resp. (Dkt. No. 78 at 3); Pl. Supplemental Br. (Dkt. No. 88 at 2).) But in light of the *Milner* opinion's account of the natural waxing and waning of littoral property lines, such evidence cannot show that "but for" Defendants' piers, *no* erosion would have occurred. More importantly, from the evidence provided by Plaintiff, a reasonable juror could not make the inference that a *specific* amount of erosion was attributable to Defendants' actions or omissions.

Plaintiffs need not provide evidence as to every grain of sand lost to survive summary judgment; rather, Plaintiffs simply needed to furnish a basis by which to measure and apportion damages from Defendants' actions.[3] Plaintiffs suffer from a lack of evidence because there is no record of where the MHW line was at the time each owner came to Sandy Point, and even some of the owners themselves cannot point to any specific erosion on their property. (*See* Def. Mot. (Dkt. No. 65 at A-1–B-5) (Defendants were able to compile appendices of instances where the Plaintiffs, in their declarations, admitted that they could not identify erosion or specific damages

---

[3] The Court is mindful of Plaintiffs' challenge in proving their claims, particularly in light of the Restatement's requirement that quantifiable damage need only be established with "as much certainty as the nature of the tort and the circumstances permit." RESTATEMENT (SECOND) OF TORTS § 912 (2008). Notwithstanding, the Court does not believe, and the Plaintiffs do not argue, that the task is an impossible one.

ORDER — 7
C06-1220-JCC

and had not conducted any surveys on their property).) Without such evidence, jurors would be forced to speculate about how much the beach had eroded and the amount to attribute to Defendants' actions. Each of the Plaintiffs came to the property at a different time, and this claim fails as a matter of law because a reasonable jury, from the facts alleged in the pleadings, could not establish the MHW line on each of the individual Plaintiffs' property at the time of acquisition—the absolute basis for establishing any damages in this case. *See Kaech v. Lewis County Pub. Util. Dist. No. 1*, 23 P.3d 529 (Wash. Ct. App. 2001) (stating that damages for property loss are intended "to place the injured party in the condition in which he would have been had the wrong not occurred.")

The Court acknowledges that the construction of Defendants' piers no doubt had some consequence relating to the natural flow of the ocean around Sandy Point, but the Plaintiffs have the burden of showing that their individual lots were affected, and to what degree. This case cannot be allowed to proceed under the general theory that some of the beach at Sandy Point has eroded. Plaintiffs have had ample opportunity to respond to Defendants' assertions that their evidence is lacking, but instead, Plaintiffs would simply point to their experts' opinion and proclaim that they will be able to demonstrate at trial what they could not show in their pleadings. The Court will not ferret through Plaintiffs' evidence in the hopes of finding answers regarding the location and movement of the MHW over the course of Plaintiffs' ownership. That is a burden for the Plaintiffs to satisfy. *See Orr*, 285 F.3d at 775. Plaintiffs have failed to submit evidence tending to establish the injury they incurred at the hands of Defendants, and therefore their claim for negligence must fail as a matter of law.

//

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment (Dkt. Nos. 64 & 65) are hereby GRANTED. Plaintiffs' Motion to Substitute One Expert Witness (Dkt. No. 68) is DENIED AS MOOT.[4] The Clerk is directed to CLOSE THE CASE.

SO ORDERED this 10th day of November, 2009.

*/s/ John C. Coughenour*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[4] This is an inappropriate time for substitution of a witness. Almost three years after their initial complaint, more than six months after the expert disclosure deadline, and on the same day as they filed their Response to Defendants' Motions for Summary Judgment, Plaintiffs seek to replace an expert with one who could potentially be more helpful to their claims. Plaintiffs have had ample time to develop their case, and the Court will not grant an additional opportunity here. The Court extends Mr. Miller its sympathies.